## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No.: 3:15-cr-36/MCR**

**RICHARD MICHAEL COLBERT**

_____/

### DEFENDANT'S BRIEF REGARDING CONFLICT

Defendant, Richard Colbert, files this *Brief* in response to the Court's inquiry regarding the use of back-up counsel as a remedy to any conflict raised by counsel's past representation of Government witnesses testifying against the Defendant.

### ISSUE

To balance an accused's *Sixth Amendment* right to choose his own counsel for a criminal trial with the Court's inherent duty to ensure a fair administration of justice, may the Court accept a valid waiver and allow the use of co-counsel to cure any conflict issues involving the examination of former clients who now testify against the accused client?

### ANSWER

Most certainly. After Defendant's knowing and intelligent waiver of existing and possible conflicts stemming from his counsel's past representations, other counsel may be used to cure any such conflicts by conducting the cross-examination of any past client - now adverse witness. The use of other counsel, co-counsel, or back-up counsel as these terms are used in the case law is a legally satisfactory resolution to this type of conflict.[1]

---

[1] *U.S. v. Jeffers*, 520 F. 2d 1256 (7th Cir. 1975); *U.S. v. Agosto*, 675 F. 2d 965 (8th Cir. 1982); *U.S. v. Miranda*, 936 F.Supp. 945 (S.D.Fla. 1996).

## LEGAL ANALYSIS

The moving party must meet a high burden of proof to disqualify counsel when there is a valid waiver by the current client.  The burden is a clear showing that the present and former clients' interests are adverse.[2]  Moreover, the alleged witnesses must ***actually*** testify in an adverse manner for co-counsel to be necessary.

### Waiver

Finding a conflict of interest does not end the inquiry regarding whether an attorney may continue.[3]  A defendant may successfully remedy the conflict created by successive representation through an "acceptable waiver."[4]  An acceptable waiver is both knowing and intelligent.[5]

> Whether a waiver is knowing and voluntary (or intelligent) is based on an examination of the facts, including such things as whether 'the district court advised [the defendant] knowingly, voluntarily, and intelligently waived his right to have an attorney unburdened by a potential conflict represent him [in the proceedings].[6]

"Such a waiver, however, does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truthseeking function of the proceedings over which it is presiding by considering  whether the defendant has effective assistance of counsel, regardless of

---

[2] *Samontry v. State*, 2012 Ark. 105,183-4 (Ark. 2012), citing *Agosto*, 675 F. 2d at 973.

[3] *U.S. v. Kiley*, 2011 WL 6122287 (D.Minn. 2011).

[4] *Id.*

[5] *Agosto*, 675 F.2d at 969-70.

[6] *Kiley* at 7 citing *U.S. v. Johnson,* 131 F. Supp. 2d at 1101 (N.D. Iowa 2001), citing *U.S. v. Ayd*, 25 F. 3d 624, 627(8th Cir.1994), and *U.S. v. Reed*, 179 F. 3d 622, 626 (8th Cir.1999).

any proffered waiver."[7]    The Court must rule in a manner not only consistent with the defendant's *Sixth Amendment* rights, but also in a manner that ensures the public's confidence in their criminal justice system. Thus, the Court must engage in thoughtful analysis beyond the Defendant's knowing and intelligent waiver and look to the alternatives available to resolve conflict and guarantee the constitutional rights of the accused.[8]

To do this, the use of co-counsel should be examined. While we are still in a pre-trial posture, some assumptions must be made about what ***might*** happen.   The Government has suggested it will introduce testimony from Lawrence Wright and Sean Davis.   We assume neither former client will waive any privilege they have with Mr. LaDouceur.   We further assume that both former clients intend to testify adversely to Mr. Colbert.   And lastly, we assume that both Mr. LaDouceur's former clients turned government's witnesses will, in fact, actually appear and testify adversely to Mr. Colbert.  Of course, if any of these assumptions do not come to fruition, the use of co-counsel could be totally unnecessary.

### Independent Source of Information

Importantly, and not discussed at the recent hearing, Mr. Colbert has provided a sworn *Affidavit* that there should be no confidential information held by Mr. LaDouceur to which he is not personally privy from his past representation of these same witnesses.   Mr. Colbert is a lawyer and represented these same parties in the past.  Surely, Mr. Colbert is able to use his own knowledge in the defense of his own liberty.

More to the point, an attorney may resolve the issue of a potential conflict where an independent source of factual information is available upon which counsel may draw to conduct

---

[7] *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir.), *cert. denied*, 501 U.S. 1211 (1991).

[8] *Johnson*, 131 F.Supp. 2d. 1088, at 1102, citing *U.S. v. Wheat*, 486 U.S. at 1602.

an effective cross-examination.[9]    Accordingly, Mr. LaDouceur could use Mr. Colbert's knowledge to cross any former client.

As support, in *U.S. v. Johnson*, the district court dealt with an attorney that had met with an informant who later testified against that counsel's client, the defendant.[10] The *Johnson* court analyzed whether any confidential information from the informant would cause a conflict sufficient to keep counsel form cross-examining with that information. The court reasoned that the informant's plea agreement debrief included information about his criminal conduct and served as an independent source of information from which the attorney could have drawn in order to prepare cross-examination.[11]  The *Johnson* court noted that privileged communications and the facts that were disclosed were separate things.[12]

Likewise, any factual information about the past clients known to Mr. Colbert could be conveyed to his counsel (regardless of who it is) in preparation for trial and cross-examination. Therefore, any conflict can be solved through the use of an independent source of information -- Mr. Colbert's own knowledge. The Government surely would not argue that Mr. Colbert can be prosecuted using former clients, but cannot defend himself with what he knows about those very former clients.

Importantly, Mr. Colbert's position as an independent source of information uniquely distinguishes the present matter from and makes inapposite cases in line with *Kolker v. State*.[13]

---

[9] *Johnson*, 131 F.Supp. 2d. 1088, at 1099.

[10] *Id.*

[11] *Id.* at 1099.

[12] *Id.*

[13] *Kolker v. State*, 649 So. 2d 250 (3rd DCA 1994).

In *Kolker*, the Third DCA took issue with whether back-up counsel could resolve the conflict posed by successive representation.[14]   But there was no independent source of information available there.  The instant matter is unique and at this stage still in an academic posture.  For example, the prosecution in *Samontry v. State* had made allegations that testimony from former clients would be damaging, but the court found that that assertion alone did not give rise to the necessary level for disqualification.[15]   Like *Samontry*, the government has provided only assertions that Mr. LaDouceur's former clients will not waive any conflict; will be called as witnesses; will testify adversely; and object to being cross-examined by Mr. LaDouceur.

### Overcoming Disqualification

But assuming the Government can meet these assumptions, courts analyze the risk that attorney-client privileged information could be implicated in the course of cross-examination of the former client.[16] This implication could lead to the attorney failing to conduct rigorous cross-examination.[17] If the Court finds, after being presented with the solutions in this brief, that counsel should be disqualified from representing Mr. Colbert in relation to Mr. LaDouceur's former clients, then this disqualification may be resolved through the use of back-up counsel.

Cases dealing with use of back-up counsel to resolve conflicts run the gamut between concurrent representation and former clients testifying against current ones. Use of back-up counsel has been proposed in both situations, and each situation requires different standards to resolve the issue.  Obviously, more scrutiny is needed to resolve conflicts between clients

---

[14] *Id.*

[15] *Id.*

[16] *U.S. v. Kiley*, 2011 WL 6122287 (D.Minn. 2011).

[17] *Kiley*, 2011 WL 6122287 at *6.

actively being represented at the same time by one attorney. In the case at hand, no such situation exists, as the government's witnesses are former clients. Ultimately what seems clear, is that this Court has broad discretion to use its best judgment in this balancing of -- choice of counsel, waiver of a conflict, and the fair administration of justice under the *Constitution*.[18]

### Back-up Counsel

Federal Appellate Courts have long expressly reasoned that using back-up counsel cures conflicts with former client witnesses.[19]  For example, over forth years ago in *U.S. v. Jeffers*, the Seventh Circuit ruled that use of two counsel would have cured a conflict regarding a government witness and the defendant's counsel.[20]

There, the defendant, Jeffers, argued that his *Sixth Amendment* rights had been violated as his counsel did not disclose a potential conflict with a government witness.  Jeffers was later convicted and argued ineffective assistance of counsel.[21] Jeffers maintained that the undisclosed conflict, if disclosed, would have disqualified counsel and therefore, his counsel provided ineffective assistance.[22]  This argument was essentially accepted by the court, but it ruled any harm was waived at trial.

But critically for our purposes, the *Jeffers* court explained that any conflict would have been resolved by use of other counsel.[23]  The court even suggested that it was a failure on the

---

[18] *U.S. v. Garcia*, 517 F.2d 272, 273 (5th Cir. 1975).

[19] *U.S. v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975).

[20] *Id.*

[21] *Id.*

[22] *U.S. v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975).

[23] *Id.*; *U.S. v. Alberti*, 470 F.2d 878,881 (1972).

lawyer's part ***not*** to bring in back-up counsel to cure the conflict.[24] In *Jeffers,* it was not using the back up counsel that was the problem – it was ***failing*** to use back up counsel.

To address the potential, and perhaps inevitable, appellate argument of ineffective assistance of counsel following a conviction, the Eight Circuit court in *U.S. v. Agosto*, instructed the trial court to require the defendant to affirmatively, "waive the right to effective assistance of counsel in so far as that right may be impinged upon by [the attorney's] conflicts of interest and the need to employ backup counsel to alleviate those conflicts."[25]   Here, Mr. Colbert will certainly make this affirmative waiver if needed.

Cementing this analysis, in 2011, the court in *U.S. v. Kiley*, relying on the long established remedy of backup counsel and citing *Jeffers* and *Agosto*, unequivocally ruled that its use cures former client / current witness conflicts.

> Therefore, it is not necessary to disqualify [defense counsel] from representing Defendant Kiley based on [his] former representation of [government witness]. This Court notes that [defense counsel] could assign any cross-examination of [government witness] to his co-counsel . . . in order to avoid any actual conflict of interest that may arise that would cause adverse consequences to Defendant Kiley.[26]

From at least the 1970's through *Kiley*, Federal courts have allowed the use of back up counsel to remedy a conflict involving current defense counsel and past client government witnesses.

---

[24] *Jeffers*, 520 F.2d at 1267(emphasis added).

[25]  *Agosto*, 675 F.2d at 974.

[26] *U.S. v. Kiley*, 2011 WL 6122287, at *7 (D.Minn. 2011), citing (*Agosto*, 675 F.2d 974 (stating that the court saw "no reason to reject [the defendant's] proposal to employ a backup counsel as a satisfactory resolution of the conflict"); *see also United States v. Jeffers*, 520 F.2d 1256, 1266 (7th Cir.1975) (stating that there was no reason why the attorney "could not have made an offer to have some other lawyer retained for this limited purpose, or why he could not make an appropriate record demonstrating that further cross-examination would have been beneficial to his clients")).

## Conclusion

Mr. Colbert does not ask this Court to blaze a new legal path through uncharted jurisprudence. He simply seeks to use his *Sixth Amendment* right granted to him as a citizen of the United States to choose with whom he goes to trial on serious felony charges that impact his livelihood; his professional integrity, and his liberty. Certainly, his choice raises issues that have been addressed in this *Brief.* But he is not the first defendant with this same issue. The path and remedy have been established and tested.

First, Mr. Colbert possess an independent source of information potentially needed for a vigorous cross examination. This alone can cure any conflict issue. Second, even without this independent source of information, back up counsel – not from Mr. LaDouceur's lawfirm, clearly – may be employed to cross examine any former client. And, third, if needed, Mr. Colbert is willing to waive an effectively assistance of counsel as outlined in *Agosto.* For these three compelling reasons, the Court should allow Mr. Colbert to choose his desired counsel for the criminal trial he resolutely faces.

Respectfully submitted by:

TODD M. LADOUCEUR, Florida Bar No.: 064051
MICHAEL V. ANDRY, Florida Bar No.: 0105043
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, P.L.C.
118 East Garden Street
Pensacola, Florida 32502
Telephone: (850) 436-7000
Facsimile: (850) 436-7099
E-Mail: tmlservice@gallowayjohnson.com
*Counsel for Defendant*

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Local Rule 7.1, Defendant hereby certifies that the above *Objection* contains 2,367 words and is in 12-point Times New Roman font.

Respectfully submitted by:

TODD M. LADOUCEUR
MICHAEL V. ANDRY

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished VIA CM/ECF's electronic delivery to the government on this 19th day of **February, 2016:**

TODD M. LADOUCEUR
MICHAEL V. ANDRY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                              Case No.: 3:15-cr-36/MCR

RICHARD MICHAEL COLBERT

_____/

## AFFIDAVIT OF RICHARD MICHAEL COLBERT

I, Richard Michael Colbert , appear before the undersigned authority and after being duly sworn make the following statement:

1. I have continuously been a member of the Florida bar since May 13, 1987.

2. I met Larry Wright more than 20 years ago while he was developing a hotel in Pensacola, FL.

3. I worked with Larry Wright on numerous real estate deals over the following 15 years.

4. I partnered with Larry Wright on a number of real estate deals over that period.

5. I have worked with and for Larry Wright's family.

6. As a client, Larry Wright informed me about his personal life on a regular basis.

7. I referred Larry Wright to Todd LaDouceur on personal litigation matters.

8. I remained General Counsel to Mr. Wright while he was represented by Mr. LaDouceur.

9. I was privy to the same information as Mr. LaDouceur during his representations with Larry Wright.

10. In any case Mr. LaDouceur was handling prior to October of 2011, I served as general counsel, and was involved with both he and Mr. Wright.

11. I met Sean Davis through Larry Wright in the mid 2000's while he was a loan officer for Regions Bank.

12. I became involved with Premier Community Bank through dealings with Sean Davis working for the bank.

13. I referred Sean Davis to Mr. LaDouceur on personal litigation matters.

14. I remained in communication with Mr. Davis and Mr. LaDouceur while he was represented by Mr. LaDouceur.

15. I was privy to the same information as Mr. LaDouceur during his representations with Sean Davis.

16. Presidio Developers, LLC was formed in 2000 by Gary McMichael and Dr. Zachos as partners, to develop the Presidio condominium in Fort Walton.

17. Most of my contact on the project was with Mr. McMichael, as he was heavily involved in the construction process.

18. I formed the company and represented McMichael and Zachos and had previously represented them prior to that in connection with a medical office building they developed in Fort Walton (MZ Ventures, LLC).

19. I also represented Gary McMichael in several dealings without Dr. Zachos.

20. When Dr. Zachos was sued by the lender on the property, he retained separate counsel and filed suit against Gary McMichael and me.

21. I referred Gary McMichael to Mr. LaDouceur to defend the lawsuits brought by defaulted buyers seeking to recover their deposits, and to defend the foreclosure.

22. I consulted with Mr. McMichael and Mr. LaDouceur through the entire litigation process.

23. There cannot be anything about Presidio or Dr. Zachos that Todd knows that I do not know from personal knowledge.

**BEFORE ME**, the undersigned authority, personally appeared Richard Colbert, who being duly sworn, declared as follows:

I declare under penalty of perjury that the foregoing is true and correct.

_____
Richard Colbert, Affiant

**STATE OF FLORIDA**
**COUNTY OF ESCAMBIA**

**SUBSCRIBED AND SWORN TO BEFORE ME** on this ____19th____ day of February __, 2016 by Richard Colbert.

Teri Maija Russell
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF904888
Expires 7/30/2019

_____
Notary Public, State of Florida

_____
Teri    Russell
(Print, Type, or Stamp Commissioned Name of
Notary Public)

Personally Known _____ OR Produced Identification ___DL___

Type of Identification Produced ___DL # C416-753-61-109-0___